Perley M. LEWIS and Mildred C. Lewis, his wife, Plaintiffs-Appellants,

v.

Walter J. HICKEL, as Secretary of the United States Department of the Interior; Charles H. Stoddard, as Director of the Bureau of Land Management, United States Department of the Interior; Fred J. Weiler, as Arizona State Director of the Bureau of Land Management, United States Department of the Interior; Roy T. Helmandollar, as Manager, Phoenix Land Office, Bureau of Land Management, United States Department of the Interior, Defendants.

No. 23086.

United States Court of Appeals, Ninth Circuit.

Argued March 12, 1970.

Decided June 1, 1970.

John D. Lewis (argued), of Holman, Lewis, MacArthur & Carver, Tempe, Ariz., for appellants.

Robert S. Lynch (argued), U. S. Dept. of Justice, Lands Division, S. Kashiwa, Asst. Atty. Gen., Lands Division, Washington, D. C., Richard K. Burke, U. S. Atty., Tucson, Ariz., Richard S. Alleman, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before BARNES, HAMLEY and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellants brought suit to overturn a decision of the Secretary of the Interior rejecting their application for a private exchange of lands under the Taylor Grazing Act of 1934, 48 Stat. 1272, as amended, 43 U.S.C. § 315 et seq. (1964). Summary judgment was granted for the Secretary and this appeal followed. We affirm.

The Taylor Grazing Act gives the Secretary power to create and administer grazing districts on the public lands " * * * to preserve the land and its resources from destruction or unnecessary injury, and to provide for the orderly use, improvement and development of the range." Sellas v. Kirk, 200 F.2d 217, 218 (9th Cir. 1952). Among the powers granted to the Secretary is the power to protect and rehabilitate land within the grazing districts (43 U.S.C. § 315a), the power to issue grazing permits (43 U.S.C. § 315b), the power to classify land as more suitable for non-grazing uses (43 U.S.C. § 315f), and the power to exchange private or state-owned lands for federally-owned lands. 43 U.S.C. § 315g (c–d). Section 2 of the Act, 43 U.S.C. § 315a, gives the Secretary authority to issue rules and regulations "to accomplish the purposes of this chapter * *."

The case now before us concerns the private exchange provisions of the Act, which are set forth in the margin.[1] A

---

1. "When public interests will be benefited thereby the Secretary is authorized to accept on behalf of the United States title to any privately owned lands within or without the boundaries of a grazing district, and in exchange therefor to issue patent for not to exceed an equal value of surveyed grazing district land or of unreserved surveyed public land in the same State or within a distance of not more than fifty miles within the adjoining State nearest the base lands." Sec. 8 (b) of Act, as amended, 43 U.S.C. § 315g (b) (1964).

"Before any such exchange under this section shall be effected, notice of the contemplated exchange, describing the lands involved, shall be published by the Secretary of the Interior once each week for four successive weeks in some newspaper of general circulation in the county or counties in which may be situated the lands to be accepted, and in the same manner in some like newspaper published

summary of the administrative history will point up the issues on this appeal.

On June 6, 1956, appellants filed a private exchange application in the Phoenix Land Office, offering to exchange 389 acres of land owned by appellants ("base lands") for 160 acres of federally-owned lands within a grazing district ("selected lands"). The Land Office found the exchange to be in the "public interest," but upon appeal by Vantex Land and Development Co. (Vantex), a a grazing lessee on the selected lands who had filed an overriding exchange application, the Director of the Bureau of Land Management remanded the case to the Land Office for a determination as to which of the two exchanges "is more in the public interest."

Following remand, no appeal having been taken from the Director's decision, the Land Office on September 23, 1959, entered a decision finding appellants' exchange to be in the "public interest" and rejecting the Vantex exchange. By November 4, 1959, appellants had completed all steps required by Section 8(d) of the Act and the regulations (43 C.F.R. § 146.4–6 (1954 rev.)),[2] including submission of a deed to the base lands in favor of the United States.

On October 23, 1959, Vantex filed an appeal to the Director from the Land Office decision of September 23. Although appellants moved to dismiss the appeal, no decision was forthcoming until March 20, 1961. At that time the Director denied the motion to dismiss and once again remanded the case to the Land Office to determine the efficacy of the

exchange under a more stringent "public interest" test which had been adopted in the interim.[3] Upon remand the exchange was found lacking under the new standards, and this finding was affirmed by the Director and Secretary. This legal action followed.

■ We first dispose of appellants' contention that the second appeal by Vantex should have been dismissed for failure to appeal from the Director's first decision. While the Director found the exchange to be in the public interest on the first appeal, and no appeal from that finding was taken to the Secretary, this does not mean that the finding became "final" or the "law of the case." Vantex's choice to return to the Land Office instead of appealing to the Secretary, could not preclude the Secretary from reviewing all the findings following the remand. Closely analogous is the rule that a Court of Appeals remand does not preclude the Supreme Court from reviewing all previous rulings on an appeal following a remand. *See* Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 257–259, 36 S.Ct. 269, 60 L.Ed. 629 (1917). 6 J. Moore, Federal Practice ¶ 54.08 [2] (1966).

The second issue raised is whether appellants are entitled to compel issuance of the patent on the selected lands because they complied with all the necessary conditions regarding transfer of the base lands to the United States.

Stripped of all surplusage, appellants' argument questions the validity of 43 C.F.R. § 146.3(b) (2) (1954 rev.),[4] which provides that the authorized officer may

---

in any county in which may be situated any lands to be given in such exchange; lands conveyed to the United States under this chapter shall, upon acceptance of title, become public lands, and if located within the exterior boundaries of a grazing district they shall become a part of the district within the boundaries of which they are located: * * * No fee shall be charged for any exchange of land made under this chapter except one-half of the cost of publishing notice of a proposed exchange as herein provided." Sec. 8(d) of Act, as amended, 43 U.S.C. § 315g(d) (1964).

2. Minor changes in the regulations were made in 1968 and now appear at 43 C.F.R. § 2244 (1969).

3. On February 14, 1961, the Secretary issued a press release stating, in part:
"Private exchanges will not be entertained or consummated except where it is shown that there are compelling reasons so acquire the offered lands to augment long-range Federal resource management programs."

4. Now substantially repeated in 43 C.F.R. § 2244.1–4 (1969).

at any time prior to issuance of a patent on the selected lands determine that the exchange should not be completed. The regulation also states that the applicants shall have no contractual or other rights against the United States prior to receiving the patent. Appellants contend that the regulation is contrary to the procedure outlined by Congress in Section 8 of the Act (see footnote 1, *supra*), and "the general law applicable to exchanges."

■ Our review of the Act, read as a whole, leads us to conclude that Congress intended nothing more than to grant the Secretary power to enter into exchanges, subject to the "public interest" requirement and the applicable notice provisions to protect interested third persons. As between the applicant and the Secretary, the Act does not circumscribe the manner in which the exchange is to be consummated. This lack of direction implies that the terms and conditions upon which exchange proposals may be made fall within the Secretary's general rule-making power, provided the regulation does not defeat the congressional purpose or entrench upon constitutionally protected freedoms. Compare Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); Greene v. McElroy, 360 U.S. 474, 79 S. Ct. 1400, 3 L.Ed.2d 1377 (1959). We can find no such problems here. *See* Ferry v. Udall, 336 F.2d 706, 714 (9th Cir. 1964).

■ Our conclusion that the Secretary has power to reject applications prior to issuance of the patents finds support in section 6 of the Act of April 28, 1930, as amended, 43 U.S.C. § 872 (1964).

That section gives the Secretary authority to return base land deeded to the United States in an exchange transaction when the exchange is "thereafter withdrawn or rejected." Hence, no rights could accrue to either side to the exchange before issuance of the patent on the selected lands.[5]

Appellants place strong reliance upon Payne v. New Mexico, 255 U.S. 367, 41 S.Ct. 333, 65 L.Ed. 680 (1921), a case involving the Secretary's denial of an exchange under an Act granting New Mexico the *right* to select certain lands for the support of common schools. However, that case and others like it[6] are inapposite since they arose under statutes granting interests in lands once certain conditions had been complied with. Hence, the power conferred upon the Secretary was merely "judicial in its nature" (255 U.S. at 371, 41 S.Ct. 333) in the sense that his only function was to ascertain whether the specified conditions had been met.[7]

■ Under the exchange provisions of the Taylor Grazing Act, the power conferred on the Secretary is much broader than that of determining if the applicant has met the conditions prescribed by Congress. In addition, he must determine that "public interests will be benefited" by the exchange. Until this determination is finally resolved and the patent issued, the exchange application is nothing more than a proposal under which no contract rights arose and no equitable title vested.

This result is identical in principle with cases involving a cash deposit pending issuance of a cash certificate under the Isolated Tracts Act, Rev.Stat. § 2455,

---

5. Appellants argue that this section is inapplicable to private exchanges under the Taylor Grazing Act. However, the Act of April 28, 1930, was a general grant of power to the Secretary and we can see no reason why Congress was required to re-enact this provision four years later in the Taylor Grazing Act.

6. Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742 (1921); Benson Mining & Smelting Co. v. Alta

Mining & Smelting Co., 145 U.S. 428, 12 S.Ct. 877, 36 L.Ed. 762 (1892).

7. In Wyoming v. United States, 255 U.S. 489, 496, 41 S.Ct. 393, 395, 65 L.Ed. 742 (1921), the Court stated:
 "The power confided to [the Secretary] was not that of granting or denying a privilege * * *, but of determining whether an existing privilege conferred by Congress had been lawfully exercised."

as amended, 43 U.S.C. § 1171 *et seq.* (1964). Lewis v. Udall, 374 F.2d 180 (9th Cir. 1967); Ferry v. Udall, 336 F.2d 706 (9th Cir. 1964); Willcoxson v. United States, 114 U.S.App.D.C. 203, 313 F.2d 884 (1963).

 Having decided that the Secretary had authority ultimately to reject appellants' application, we then turn to their contention that it was an abuse of discretion to do so. However, for the reasons given in Ferry v. Udall, *supra,* and Sellas v. Kirk, 200 F.2d 217 (9th Cir. 1952), we conclude that the determination of "public interest" is one "by law committed to agency discretion" and therefore unreviewable. Administrative Procedure Act § 10, 5 U.S.C. § 1009 (1964). *See* also Hall v. Hickel, 305 F.Supp. 723 (D.Nev.1969).

Affirmed.