This case involving land exchange comes before the' court on defendant’s motion to dismiss on the ground that the petition fails to state a claim upon which relief can be granted. Plaintiff opposes the motion. Since the plaintiff has submitted an affidavit, and defendant has not objected, we shall treat this motion, pursuant to Rule 38(b)(2), as a motion for summary judgment. We conclude that there are no disputed issues of material fact, and hold for the defendant as a matter of law.
Plaintiff owns approximately 198 acres of land located 45 miles northwest of Las Vegas, Nevada. The property is principally forest land and is adjacent to the Toiyabee National Forest. In 1971 plaintiff began negotiations with the United States Forest Service (Forest Service) on a proposal to exchange his property (offered property) for approximately 78 acres located two to three miles southwest of Las Vegas which was owned by the Government (exchange property).
The exchange property was divided into a number of sections and each section was further divided into parcels. The property fell within the jurisdiction of the Bureau of Land Management (BLM), Department of Interior. The statute under which the proposed exchange was to be made, Section 8 of the Taylor Grazing Act, 43 U.S.C. § 315g(b) (repealed)[1], required that the private land offered be equal in value with the exchange property. The Forest Service was responsible for the preparation of appraisals of the offered lands and the exchange lands. The final decision on the exchange, however, was the responsibility of the BLM.
*610 We do not find it necessary for the decision in this case to describe in full the events which occurred between the time when negotiations were commenced, and the time when this petition was filed. It is sufficient to note that there were a series of disagreements and delays due to the Forest Service’s inability to provide appraisals which were acceptable to the BLM. In order to encourage a settlement, the plaintiff agreed to delete a number of the parcels from the exchange lands originally suggested, reducing the area to approximately 68 acres. There were also on-going negotiations among the plaintiff, the Forest Service, and the BLM in an effort to obtain an appraisal acceptable to the BLM.
It was not until December 1977 that the BLM announced a decision accepting an appraisal of both the offered lands and the exchange lands. The BLM gave plaintiff 30 days to choose a number of parcels from the exchange lands which, according to the appraisal, were equal in value to the lands offered by the plaintiff. Since that appraisal determined that the offered lands were worth less than one-sixth the value of the lands originally selected for the exchange, the plaintiff appealed the decision to the Interior Department Board of Land Appeals (Board). The Board affirmed the decision of the BLM in all respects.
Plaintiff argues that there was an agreement between himself and the Government to exchange lands entered into in 1972, and that the BLM decision breached that contract. He also argues that by delaying the exchange of lands, the defendant has interfered with his enjoyment and use of his lands. He contends that this interference has been so substantial and severe as to amount to a constitutional taking of the lands for which the plaintiff is entitled to just compensation.
In its motion to dismiss, the defendant argues that the delay in determining which parcels of the exchange land were equal in value to the offered lands does not give rise to a claim for a constitutional taking by the Government. It also contends that no contract to exchange was formed, and that none of the governmental officials involved had the authority to make either an express or implied contract to exchange lands.
We note at the outset that the treatment accorded to the plaintiff by the Government has been unfortunate. Such *611 long delays, especially when they are due to intragovern-mental disagreements, undermine respect and confidence in the Government. We conclude, however, that the plaintiff has failed to show either the existence of a contract, or an interference with his property rights sufficient to indicate a constitutional taking by the Government. See Grasso v. United States, 218 Ct. Cl. 717 (1978).
Plaintiff contends that he accepted an offer to exchange property with the Government communicated to him by letter of March 10, 1971. He also argues that he accepted a counteroffer by the Government contained in a letter of May 15,1972. Nowhere in these letters, however, is there a promise by the Government to exchange the lands. "In general, the obligation of the Government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention.” Cutler-Hammer, Inc. v. United States, 194 Ct.Cl. 788, 794, 441 F.2d 1179, 1182 (1971). The evidence offered by the plaintiff, when considered in its most favorable sense, fails to show an unambiguous offer to exchange. In order to establish such a contract there must be a mutuality of intent and lack of ambiguity in offer and acceptance. See Russell Corp. v. United States, 210 Ct.Cl. 596, 537 F.2d 474 (1976), cert. denied, 429 U.S. 1073 (1977).
Even if the plaintiff could show the existence of an offer, a regulation, 43 C.F.R. § 2204.2-3 (1977), clearly states that actions taken prior to the issuance of an instrument of transfer will not establish a contract with the Government to exchange lands. The regulations also state that an application for an exchange of lands may be rejected at any time prior to the issuance of the instrument of transfer. 43 C.F.R. § 2204.2-1 (1977); see Lewis v. Hickel, 427 F.2d 673, 676 (9th Cir. 1970), cert. denied, 400 U.S. 992 (1971). The United States is not bound by its agents acting beyond their authority and contrary to regulations. Federal Crop. Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947). This same lack of authority precludes the application of the doctrine of equitable estoppel. See Emeco Industries, Inc. v. United States, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973).
We see no merit in plaintiffs argument that there has been á constitutional taking of his property by the *612 Government. In order to imply a constitutional taking, the interference by the Government with the owners’ use of the property must be substantial and burdensome. United States v. General Motors Corp., 323 U.S. 373 (1945); Benenson v. United States, 212 Ct.Cl. 375, 548 F.2d 939 (1977). Plaintiff claims that the defendant’s failure to act promptly denied him the use of his land for development purposes. The Government, however, never claimed to have the right to prevent plaintiff from developing his property. The plaintiff chose to refrain from disposing of the land apparently in the hope that his proposed exchange with the Government would be consummated. Any interference with the property rights of the plaintiff was de minimis. See Grosso v. United States Postal Service, supra.
Accordingly, it is ordered, upon consideration of the parties’ submissions, but without oral argument, that defendant’s motion to dismiss the petition (treated herein as a motion for summary judgment) is granted.

 The authority to make such exchanges since 1976 has been in Section 206 of the Federal Land Policy Management Act, 43 U.S.C.A. § 1716 (1978). This provision also requires that the offered lands be at least of an equal value to the exchange lands.