Hat, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff brings this suit to recover the value of a mining claim taken from it by the defendants. On July 1, 1899, the plaintiff discovered and duly located a placer mining claim on the public domain of the United States near the Nome River and Bering Sea in the Territory of Alaska. It complied with all legal requirements in locating said claim and filed for record in the office of the recorder for the Cape Nome mining district the location notice, which was duly recorded in Volume XVI, page 63, of the official records of said recorder’s office. The said notice complied in all respects with the laws of the United States. Before the end of the year following the location of the aforesaid claim the plaintiff had erected thereon a tool and storage log cabin about 14 by 25 feet in size and had sunk six or seven prospect pits to a depth of from 7 to 9 feet about 100 feet apart on said claim and had sunk a timbered shaft 5 by 7 feet and 22 feet in depth. These pits and shaft disclosed a deposit of auri-ferous ruby sand and gravel and showed that the claim was well adapted for placer mining. The plaintiff also had placed around the exterior land boundaries of said claim a line of posts, all of which, including the cost of said cabin, amounted to an expenditure on the claim of $600. ■ This cabin was afterwards paid for by the United States. The plaintiff during the year 1899 and 1900 made application for a survey *428 for patent to said placer claim, and also bad the claim surveyed by the United States deputy mineral surveyor.
About July 1, 1900, Gen. Randall, an officer of the Army of the United States, who at that time commanded the troops of the United States in Alaska, took possession of a tract of land, including the mining claim of the plaintiff, and announced that he intended to use the same as a site for an Army post. He was not then authorized to select any part of the public domain for that purpose, nor had the President of the United States reserved or set apart any of said tract of land for military purposes. However, he called upon the plaintiff to give possession of its said mining claim, and the plaintiff, not being able to withstand his authority, but at the same time demanding compensation for its said claim, gave up the possession thereof to said officer. Gen. Randall then recommended to the Secretary of War that said tract of land should be used as a site for an Army post, and on December 8, 1900, the President of the United States issued an order reserving from sale and setting aside for military purposes the tract of land in which was included the mining claim of the plaintiff. The petition in this case was filed on the 7th day of December, 1906.
The tract of land so taken by the United States, in which tract was included the mining claim of the plaintiff, has been occupied by the defendants and used by them as an Army post ever since the order of the President was issued, and the buildings erected on said land are located on that portion of the land whereon is located the mining claim of the plaintiff. And by reason of the taking of this land by the defendants the plaintiff has been unable to operate its claim or to do any further mining work thereon.
The facts above recited show that the plaintiff had acquired a right to this placer claim by fully complying with the law, and that the United States had notice of the claim of the plaintiff when the land on which it was located was taken by the defendants for military purposes. A mining claim which has been perfected in accordance with law is property, and when perfected it has the effect of a grant by the United States of the right of present and exclusive possession. Belk v. Meagher, 104 U. S., 279, 283.
*429 Where there is a valid location of a mining claim, the area becomes segregated from the public domain and the property of the locator. St. Louis Mining Co. v. Montana Mining Co., 171 U. S., 650, 655. In the case of Gwillim v. Donnellan, 115 U. S., 45, 49, the court says: “A valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States, has the effect of a grant by the United States of the right of present and exclusive possession of the lands located.” And the locator, in the opinion of the court, will be entitled to possession against the United States as well as against any other defendant.
The title to the land which was set apart for military purposes was in the United States, but the mining claim of the plaintiff which it had perfected under the provisions of the statutes of the United States was its property, and if taken from it by the United States it is entitled to just compensation therefor under the Fifth Amendment of the Constitution.
It is always more or less difficult to determine the value of mining property. In this case the evidence is conflicting and witnesses in the case differ widely as to the value of the mining claim of the plaintiff. One witness puts its value at $300,000, while another witness says it has no value at all. But that the claim has some value may, we think, be deduced from all the evidence in the case. There is, of course, in it an element of speculation, but situated as it was in a country where claims of this character were constant subjects of barter and sale and where similar claims had yielded large fortunes to their discoverers, it may well be said that if the claim had been exploited it would have been one of considerable if not of great value. At best, evidence of its value is largely a matter of opinion, and taking into account the opportunities of the witnesses to form intelligent judgments who have testified in this case, we are of the opinion that the value of the plaintiff’s claim when it was takert by the defendants was $23,800, and judgment will be entered for that amount in favor of the plaintiff. It is so ordered.
Downey, Judge; Barney, Judge; Booth, Judge; and Campbell, Chief Justice, concur.