Andrew L. FREESE, 2d

v.

The UNITED STATES.

No. 334–78.

United States Court of Claims.

Jan. 28, 1981.

Andrew Freese, 2d, pro se.

Ronald G. Gluck, Washington, D.C., with whom was Asst. Atty. Gen., James W. Moorman, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

## ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

KUNZIG, Judge:

This taking case comes before the court on the parties' cross-motions for partial summary judgment on Count I of plaintiff's petition. Plaintiff is the owner of five unpatented mining claims located on federal lands. In 1972, Congress incorporated these lands into the newly established Sawtooth National Recreation Area (Sawtooth). The law creating Sawtooth expressly terminated the ability of existing claimholders to proceed to patent upon claims located in the recreation area, i. e., to obtain fee title to the lands in which the claims are located. This case concerns the question whether Congress' action amounts to an unconstitutional taking by inverse condemnation. We hold for the Government. While plaintiff's opportunities have been somewhat narrowed, plaintiff has not suffered a deprivation of "private property" within the meaning of the fifth amendment.

■ Mining claims upon lands owned by the United States are "initiated by prospecting for minerals thereon, and, upon the discovery of minerals, by locating the lands upon which such discovery has been made. A location is made by (a) staking the corners of the claim... (b) posting notice of location thereon, and (c) complying with the State laws, regarding the recording of the location in the county recorder's office...." 43 C.F.R. § 3831.1 (1979). In order to hold the claim, "not less than $100 worth of labor must be performed or improvements made thereon annually". 43 C.F.R. § 3851.1 (1979). The owner of the mining claim "shall have the exclusive right of possession and enjoyment" of the claim. 30 U.S.C. § 26 (1976). Ownership of a mining claim does *not* confer fee title to the lands within which the claim is located. Fee title passes only upon the issuance of a patent therefor. *See Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963); *Benson Mining and Smelting Co. v. Alta Mining*

*and Smelting Co.*, 145 U.S. 428, 430, 12 S.Ct. 877, 878, 36 L.Ed. 762 (1892).

A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person ... or corporation authorized to locate a claim under ... this title [Mineral Lands and Regulations in General] ... having claimed and located a piece of land for such purposes, who has ... complied with the terms of this title ... may file in the proper land office an application for a patent, under oath, showing such compliance, together with a plat and field notes of the claim ... made by or under the direction of the Director of the Bureau of Land Management, showing accurately the boundaries of the claim ... which shall be distinctly marked by monuments on the ground, and shall post a copy of such plat, together with a notice of such application for a patent, in a conspicuous place on the land embraced in such plat previous to the filing of the application for a patent, and shall file an affidavit of at least two persons that such notice has been duly posted, and shall file a copy of the notice in such land office, and shall thereupon be entitled to a patent for the land, in the manner following: The register of the land office, upon the filing of such application, plat, field notes, notices, and affidavits, shall publish a notice that such application has been made, for the period of sixty days, in a newspaper to be by him designated as published nearest to such claim; and he shall also post such notice in his office for the same period. The claimant at the time of filing this application, or at any time thereafter, within the sixty days of publication, shall file with the register a certificate of the Director of the Bureau of Land Management that $500 worth of labor has been expended or improvements made upon the claim by himself or grant-ors; that the plat is correct, with such further description by such reference to natural objects or permanent monuments as shall identify the claim, and furnish an accurate description, to be incorporated in the patent. At the expiration of the sixty days of publication the claimant shall file his affidavit, showing that the plat and notice have been posted in a conspicuous place on the claim during such period of publication. If no adverse claim shall have been filed with the register of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of $5 per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the appellant has failed to comply with the terms of ... this title....

30 U.S.C. § 29 (1976). *See generally* 43 C.F.R. §§ 3861.1–3864.1–4 (1979).

Between the years 1955 and 1970, plaintiff acquired five unpatented mining claims upon federal lands located in Idaho.[1] In 1972, Congress established the Sawtooth National Recreation Area, including within its boundaries the lands containing plaintiff's claims. Pub.L.No. 92–400, August 22, 1972, 86 Stat. 612, 16 U.S.C. §§ 460aa–460aa–14 (1976) (Sawtooth Act). The Sawtooth Act expressly provides that, "Subject to valid existing rights, all Federal lands located in the recreation area are hereby withdrawn from all forms of location, entry, and patent under the mining laws of the United States." 16 U.S.C. § 460aa–9 (1976). The Act further provides that, "Patents shall not hereafter be issued for locations and claims heretofore made in the recreation area under the mining laws of the United States." 16 U.S.C. § 460aa–11 (1976). The impact of these provisions is that, while the right of possession and en-

---

1. The United States has the power under the mining laws to initiate a contest of the validity of unpatented mining locations. *See United States v. Springer*, 491 F.2d 239, 241 (9th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974). Heretofore, the Govern-ment has failed to initiate any such contest against plaintiff's claims. Solely for the purpose of disposing of the pending motions, the Government requests this court to assume *arguendo* the validity of plaintiff's claims.

joyment attaching to valid claims existing upon the effective date of the Act is expressly recognized and preserved, the ability to obtain patents upon these claims is expressly denied. *See* Conf.Rep.No. 92–1276, 92d Cong. 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News 3013, 3047. *See generally* 36 C.F.R. §§ 292.14–292.18 (1979). Plaintiff now contends that he has suffered an unconstitutional taking by virtue of the denial of his ability to obtain patents upon the five unpatented mining claims which he held upon the effective date of the Act.[2] Plaintiff's contention has no merit. There is no maintainable legal theory in support of his view that he has suffered a deprivation of "private property" as that term is used in the fifth amendment.

As Professor Tribe aptly observes: "[N]othing could be clearer, even today, than that a sufficiently unambiguous governmental seizure of private property for public use—a sufficiently clear laying-on of official hands followed by a transfer of possession and title to the general public—is unconstitutional unless followed by payment to the former owner of the fair market value of what was taken." L. Tribe, *American Constitutional Law* § 9–2, at 459 (1978). " 'Property', as used in the constitutional provision mandating that property shall not be taken for public use without just compensation, is treated as a word of most general import and liberally construed." J. Sackman, 2 *Nichols on Eminent Domain* § 5.1[1] (Rev. 3d ed. 1979).

**2.** For purposes of these cross-motions, plaintiff makes no contention that he has actually been hindered in any way in his ability to exploit his mining claims. His argument relates solely to the denial of his ability to obtain patents, i. e., fee title to the lands.

**3.** In *United States v. General Motors Corp.*, 323 U.S. 373, 377–378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945), the Supreme Court wrote:

> The critical terms [in the just compensation clause] are "property," "taken" and "just compensation." It is conceivable that the first [term] was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. On the other hand, it may have been employed in a more accurate sense to denote the group of rights inhering

[T]he corporeal object, (although the subject of property), is, when coupled with possession, merely the indicia—the visible manifestation—of invisible rights. Property in a specified object ... is composed of the rights of use, enjoyment and disposition of such object, to the exclusion of all others.

*Id.*[3]

 It is a matter beyond dispute that federal mining claims are "private property" enjoying the protection of the fifth amendment. Judge Finesilver of the federal district court has nicely summarized the applicable concepts:

> A mining claim is an interest in land which cannot be unreasonably or unfairly dissolved at the whim of the Interior Department. Once there is a valid discovery and proper location, a mining claim, in the language of the Supreme Court, is "real property in the highest sense." Legal title to the land remains in the United States, but the claimant enjoys a valid, equitable, possessory title, subject to taxation, transferable by deed or devise, and otherwise possessing the incidents of real property.

*Oil Shale Corp. v. Morton*, 370 F.Supp. 108, 124 (D.Colo.1973). Had plaintiff suffered an uncompensated divestment of his federal mining claims, we would have a clear constitutional violation. *See North American Transportation & Trading Co. v. United States*, 53 Ct.Cl. 424 (1918), *aff'd*, 253 U.S.

in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. In point of fact, the construction given the phrase has been the latter. When the sovereign exercises the power of eminent domain it substitutes itself in relation to the physical thing in question in place of him who formerly bore the relation to that thing, which we denominate ownership. In other words, it deals with what lawyers term the individual's "interest" in the thing in question. That interest may comprise the group of rights for which the shorthand term is "a fee simple" or it may be the interest known as an "estate or tenancy for years," as in the present instance. The constitutional provision is addressed to every sort of interest the citizen may possess.

330, 40 S.Ct. 518, 64 L.Ed. 935 (1920). The case before us, however, does not present such facts. Instead, all of plaintiff's "valid existing rights" in his mining claims are expressly recognized and preserved by the Sawtooth Act. His rights of use, enjoyment and disposition in his unpatented mining claims remain undiminished.

 Plaintiff's argument rests upon the two following propositions: 1) that his right to the issuance of a patent upon each of his mining claims vested as soon as he completed the discovery and location of each claim, and 2) that, as a consequence, he has suffered an unconstitutional divestment of his vested rights through the denial of his ability to obtain patents upon his claims. Plaintiff is correct in his assumption that the divestment of a vested right to a patent is tantamount to divestment of the patent itself, i. e., a divestment of "property". *See Benson Mining and Smelting Co. v. Alta Mining and Smelting Co.*, 145 U.S. 428, 431, 433, 12 S.Ct. 877, 878, 879, 36 L.Ed. 762 (1892); *Global Exploration and Development Corp. v. United States*, Ct.Cl. No. 135–78 (Order entered Sept. 29, 1978). The flaw in plaintiff's argument, however, inheres in his view that he has a vested right to the issuance of patents. The law is well-settled that this vested right does not arise until there has been full compliance with the extensive procedures set forth in the federal mining laws for the obtaining of a patent. *See Wyoming v. United States*, 255 U.S. 489, 497, 41 S.Ct. 393, 395, 65 L.Ed. 742 (1921); *Benson Mining and Smelting Co. v. Alta Mining and Smelting Co.*, 145 U.S. 428, 433, 12 S.Ct. 877, 879, 36 L.Ed. 762 (1892); *Willcoxson v. United States*, 313 F.2d 884, 888 (D.C.Cir.), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963); *cf. Andrus v. Utah*, 446 U.S. 500, 100 S.Ct. 1803, 64 L.Ed.2d 458 (1980) (Taylor Grazing Act reserves discretion on the part of Interior Secretary to classify lands within a federal grazing district as proper for school indemnity selection). In this case, plaintiff had not yet taken the first step towards obtaining patents upon any of his mining claims when the Sawtooth Act intervened on August 22, 1972.

The case before us thus ultimately reduces to the question whether plaintiff has suffered an unconstitutional divestment solely by virtue of the fact that he no longer has the option *to apply for* patents upon his claims. Common sense dictates a negative response. At best, plaintiff has suffered a denial of the opportunity to obtain greater property than that which he owned upon the effective date of the Sawtooth Act. This cannot fairly be deemed the divestment of a property interest, save by the most overt bootstrapping.

All other arguments raised by plaintiff, although not directly addressed by this opinion, have been considered and found to be without merit.

Accordingly, after consideration of the submissions of the parties, without oral argument of counsel, plaintiff's motion for partial summary judgment is denied. Defendant's motion for partial summary judgment is granted. Count I of plaintiff's petition is dismissed.