**Jerry D. GROVER, Jr. (doing business as Kingston Rust Development), Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 03–5021.**

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 7, 2003.

Before LOURIE, CLEVENGER, and PROST, Circuit Judges.

## DECISION

LOURIE, Circuit Judge.

Jerry D. Grover, Jr., appeals from the decision of the United States Court of Federal Claims granting summary judgment in favor of the United States. *Grover v. United States*, No. 98–26L (Fed.Cl. Sept. 16, 2002). Because the court did not err, we *affirm*.

## DISCUSSION

Mr. Grover asserts that he owns 229 oil shale mining claims in Utah. *Id.*, slip op. at 1. Mining claims are authorized by the Mining Law of 1872, 30 U.S.C. §§ 21–54 (2000), which encourages citizens to locate valuable mineral deposits on public land owned by the federal government. Provided that a claimant who has "located" a claim complies with the applicable regulations and pays the required fees, the claimant enjoys an exclusive possessory right in the surface land and the underlying mineral deposits, while the United States retains fee title in the land. Oil shale, however, was withdrawn from the Mining Law by the Mineral Leasing Act ("MLA") of 1920, 30 U.S.C. §§ 181–195 (2000), which ended a claimant's ability to locate new oil shale mining claims. However, a savings clause in the MLA preserved pre-existing oil shale mining claims, provided that they continue to satisfy applicable requirements. 30 U.S.C. § 193 (2000). We, like the Court of Federal Claims, will assume that all of Grover's claims originated before 1920 and therefore fall under the MLA's savings clause. *Grover*, slip op. at 2.

Mining claimants may simply utilize the possessory rights they have, or they may elect to attempt to obtain fee simple title to the land by filing patent applications. Grover chose the latter course. Mining patent applications are examined by the Secretary of the interior, who determines if the statutory requirements for patentability have been satisfied. *See* 30 U.S.C. § 29. When the Secretary is satisfied that certain of the requirements have been satisfied, he issues a first half final certificate ("FHFC"). An FHFC, however, does not entitle the claimant to a patent, and the

Secretary retains the power to withhold a patent anytime before the patent is issued. *See Independence Mining Co. v. Babbitt,* 105 F.3d 502, 506–07, 508 (9th Cir.1997) (noting that the validity of the involved claims was still being examined); *Independence Mining Co. v. Babbitt,* 885 F.Supp. 1356, 1357 (D.Nev.1995) (stating that the FHFC had been issued and the purchase price paid for the patent applications).

The patenting of oil shale mining claims, however, was restricted beginning in 1991. First, Congress imposed a moratorium on the Interior Department's acceptance and processing of oil shale patent applications, effective from November 13, 1991, through September 30, 1992. Pub. L. No. 102–154, 105 Stat. 990 (Nov. 13, 1991). Next, the Energy Policy Act ("EPA") of 1992, 30 U.S.C. § 242 (2000), while preserving valid existing oil shale mining claims and patents, curtailed the ability of claimants to obtain patents going forward from its effective date of October 24, 1992. By operation of the EPA, a claimant who had already applied for a patent and obtained an FHFC prior to the EPA's effective date could proceed with the patent application process and if successful obtain a full patent, *id.* § 242(b); a claimant who had applied for a patent but had not received an FHFC before the Act's effective date could obtain a limited patent to the oil shale and related minerals only, *id.* § 242(c)(1); and a claimant who had not applied for a patent before the effective date was required to make an election either to apply for a limited patent or to maintain his claim as unpatented, *id.* § 242(d)(1). Failure to make an election within a prescribed time period resulted in forfeiture of the claim. *Id.* § 242(d)(2).

None of Grover's claims has thus far been patented. The patent status of each of his claims falls into one of three categories: (1) patent applications never filed (the so-called "1964 Claims" and eighteen of the so-called "Miscellaneous Claims"), see *Grover,* slip op. at 5; (2) patent applications first filed before the EPA was enacted, but either not accepted pursuant to the pre-EPA moratorium (the so-called "Walker Claims" and the "Exxon Claims" as well as some of the "Miscellaneous Claims") or otherwise rejected (the so-called "Last Chance Claims") and then re-filed after the EPA's enactment, *id.* at 5, 21; and (3) patent applications filed before the EPA's enactment, but not yet granted and currently the subject of an administrative appeal within the Department of the Interior (the so-called "Vac Claims"), *id.* at 4–5.

Grover brought suit in the Court of Federal Claims, contending first that the EPA resulted in a taking of his property and secondly that the government's refusal to process his applications to patent his claims constituted a breach of contract. The court rejected both arguments. First, the court rejected his takings argument on the ground that the right to apply for a patent is not a property interest legally cognizable under the Fifth Amendment. *Id.* at 14. Second, the court rejected his contract argument on the ground that the mining laws do not constitute an offer by the government to contract with a claimant. *Id.* at 23. The court accordingly granted summary judgment in favor of the United States. *Id.* Grover appeals from the judgment of the court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

We review summary judgment determinations of the Court of Federal Claims *de novo. Alves v. United States,* 133 F.3d 1454, 1456 (Fed.Cir.1998). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." R. Ct. Fed. Cl. 56(c); *see also* Fed.R.Civ.P. 56(c) (same). Thus,

summary judgment may be granted when no "reasonable [fact-finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the non-movant. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed.Cir.1998).

Grover first argues that his property interest in the patents vested and he therefore had a compensable property right in those future patents when he submitted his patent applications. He primarily contends that that property interest was taken by Congress's enactment of the EPA. He also contends that he complied with all of the patent filing requirements and fee payment prerequisites either strictly or via resumption but that the government has unlawfully refused to process his patent applications. Grover further argues that the mineral patenting statutes and process have contractually bound the government to review or approve his applications and that the government's refusal to do so is a breach of that contract.

The government responds that rights in a patent do not vest until after an applicant has complied with all requirements for issuance of the patent. Because Grover had not complied with all the requirements for the grant of his patents before the EPA was enacted, the government contends that the EPA did not take from him any legally cognizable property interest. The government also responds that according to well-established precedent the mining laws do not create an offer to contract with claimants.

■ We agree with the government that Grover has not suffered a "taking." The prohibition against uncompensated takings is found in the Fifth Amendment: "[N]or shall private property be taken for public use without just compensation." U.S. Const. amend. V. A threshold test for evaluating a takings claim is to determine whether the claimant has a property interest in what he has allegedly lost. *Conti v. United States*, 291 F.3d 1334, 1339 (Fed. Cir.2002). While unpatented mining claims are property interests protected by the Fifth Amendment, *Freese v. United States*, 226 Ct.Cl. 252, 639 F.2d 754, 757 (1981), Grover does not assert that the government has taken those claims. Indeed, Grover enjoys the same possessory interests, if any, in his claims after the EPA as he did before the EPA, and the government, as the holder of the underlying fee title, is free to exercise "substantial regulatory power over those interests." *United States v. Locke*, 471 U.S. 84, 105, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). Instead, Grover asserts that the EPA has taken a property interest in his patent rights by restricting his ability to patent his claims. He asserts that his patent rights vested the moment he submitted a patent application. He bases that assertion on the text of 30 U.S.C. § 29, which states that "[a]ny person ... may file in the proper land office an application for a patent ... and shall *thereupon* be entitled to a patent for the land ...." (emphasis added).

The statutory construction advanced by Grover is incorrect. A closer inspection of § 29 reveals that the applicant's entitlement to a patent is conditioned upon compliance with no less than thirty-five different statutory sections as well as numerous requirements in the body of § 29 itself (*e.g.*, payment, providing a sufficient description of the property, posting of notice,

publication of notice).* Far from being the inception of vested patent rights, submission of a patent application is the inception of an uncertain process that might possibly result in vested rights at some later time. *See Independence Mining*, 105 F.3d at 506–07, 508 (explaining that before a patent is issued, a mineral examiner must determine the validity of the claim by performing a field examination, analyzing samples, estimating the value of the mineral deposits, and comparing that value to the cost of extraction, processing, marketing, and legal compliance; and holding that "no rights can vest before the Secretary has decided whether to contest the patent claim"); *see also* Mark Squillace, *The Enduring Vitality of the General Mining Law of 1872*, 18 Envtl. L. Rep. 10,261, 10,266 (1988) (stating that patents are rarely sought because of a "healthy fear on the part of claimants that the government, which rarely considers the validity of an unpatented mining claim, will strictly scrutinize any claim for which a patent is sought" and that "[t]he patent applicant may thus wind up with a legal declaration that his claim is invalid rather than gain fee title to the land"). Rather than vesting at the time a patent application is filed, as Grover contends, patent rights vest when "there has been full compliance with the extensive procedures set forth in the federal mining laws for the obtaining of a patent." *Freese*, 639 F.2d at 758.

*Freese* is quite similar to this case. In that case, the claimant sought compensation for what he alleged was a taking when

Congress prohibited the future patenting of his mining claims on land where Congress established the Sawtooth National Recreation Area. *Id.* at 756. The claimant made the same argument that Grover now makes, *viz.*, that "he has suffered an unconstitutional taking by virtue of the denial of his ability to obtain patents upon the five unpatented mining claims which he held upon the effective date of the Act." *Id.* at 757. The Court of Claims rejected that argument because the claimant "had not yet taken the first step toward obtaining patents upon any of his mining claims when the Sawtooth Act intervened." *Id.* at 758. Thus, the "thereupon" language of § 29 is qualified by all the substantive and procedural hurdles in the path of the patent grant. While Grover asserts that it is the government that has failed to fulfill all the requirements of the patent grant process, the requirements are nonetheless essential to be fulfilled, and any lack of action by the government was pursuant to statute, namely, Congress's moratorium on the processing of oil shale mining patent applications.

Being bound to follow the holding of *Freese*, a decision by one of this court's predecessors, we reach the same result in this case. Grover has not come forward with evidence to create genuine issues of material fact whether he has fully complied with "the extensive procedures set forth in the federal mining laws for the obtaining of a patent" before enactment of the EPA. *Id.* On the contrary, it appears that he has not even applied to patent many of his claims, and those claims which

---

* In greater detail, 30 U.S.C. § 29 (2000) states: Any person ... having claimed and located a piece of land ... who has ... complied with the terms of [thirty-five statutory sections] may file in the proper land office an application for a patent ... and shall thereupon be entitled to a patent for the land, in the manner following: [listing requirements including filing of a description of the land, filing an affidavit that $500 worth of improvements have been made on the land, posting of notice of intent of the claimant to patent the land publication both on the land and in the land office, publication of the notice for sixty days, the lack of an adverse claim, and payment of the proper fee.]

he had attempted to patent before the EPA's effective date had not advanced to the stage at which full compliance with the requirements for patenting had been established.

Grover contends that he has surpassed the *Freese* standard. He is mistaken. While it is true that he, unlike the claimant in *Freese*, had actually submitted patent applications for some of his claims, the standard articulated in *Freese* requires more – compliance with all the requirements for obtaining a patent – and that has not been done. Even issuance of an FHFC and payment of the patent purchase price do not necessarily establish compliance with the requirements for obtaining a patent. *See Independence Mining*, 105 F.3d at 508, 885 F.Supp. at 1357 (together implying that the validity of the claims was still being examined, despite issuance of the FHFC and payment of the purchase price); *see also United States v. Shumway*, 199 F.3d 1093, 1096, 1102 (9th Cir.1999) (holding that patent rights had not vested despite issuance of an FHFC and compliance with the statutory requirements to post and publish notice of the claimant's intent to patent the claim); *cf. Swanson v. Babbitt*, 3 F.3d 1348, 1353 (9th Cir.1993) (holding that the right to a patent accrues and its issuance can be compelled by court order when a *valid* patent application has been filed and the Interior Department has only purely "administerial" functions to perform).

We have carefully considered Grover's remaining arguments that he suffered a taking, and we find them unconvincing. In summary, the Court of Federal Claims correctly granted summary judgment to the government on Grover's taking claims, and we therefore affirm that judgment.

■ We also agree with the government that it has not breached a contract with Grover. In fact, no contract between the government and Grover was ever formed. As held in *Last Chance Mining Co. v. United States*, 12 Cl.Ct. 551, 556 (1987), the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–82 (2000), which created a federal recording system for mining claims, does not constitute an offer to contract with claimants. According to *Last Chance Mining*, "[i]t would do violence to traditional contract theory, not to mention the operation of government, to hold that any statute requiring some action by a citizen to obtain a benefit or protect a right constituted an open offer to contract," 12 Cl.Ct. at 556; we agree with that statement. While Grover is correct in noting the differences between the FLPMA and the patenting statutes, the rationale for the decision in *Last Chance Mining* is equally applicable in this case. There is simply nothing in the patenting statutes that can be construed as anything other than "a unilateral ultimatum on the part of the Government." *Id.* We have carefully considered the cases cited by Grover for the contrary proposition, *i.e.*, that the mining patent laws constitute an offer to contract, and we are not persuaded. Accordingly, we affirm the Court of Federal Claims' grant of summary judgment against Grover on his breach of contract claim.

Because the court did not err in granting summary judgment in favor of the government, we affirm.