# BENSON MINING AND SMELTING COMPANY *v.* ALTA MINING AND SMELTING COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 347. Argued and submitted April 28, 1892. — Decided May 16, 1892.

When the judgment in the Supreme Court of a Territory exceeds $5000 this court has jurisdiction of an appeal, although the judgment in the trial court may have been for a less sum and the jurisdictional amount is reached in the appellate court by adding interest to that judgment.

When the price of a mining claim has been paid to the government, the equitable rights of the purchaser are complete, and there is no obligation on his part to do further annual work in order to obtain a patent.

A person who wrongfully works a mine, takes out ores therefrom, removes them, and converts them to his own use is not entitled, in an action to recover their value, to be credited with the cost of mining the ores.

THE court stated the case as follows:

On July 25, 1884, appellee, plaintiff below, commenced its action in the District Court of the First Judicial District of the Territory of Arizona to recover of defendant the sum of $25,000 for 210 tons of silver-bearing ore, mined and removed from the Alta mine, situated in the Harshaw mining district, in Pima County, Arizona. A jury having been waived, the case was tried before the court, and a judgment was entered for the plaintiff, on March 22, 1886, for the sum of $4590.06, with interest from that time until paid at the rate of ten per cent per annum. Defendant took the case to the Supreme Court of the Territory, which, on February 17, 1888, affirmed the judgment. From such judgment of affirmance defendant appealed to this court.

*Mr. Nathaniel Wilson,* for appellant, submitted on his brief.

*Mr. T. M. Norwood* for appellee. *Mr. J. A. Anderson* filed a brief for same.

Mr. Justice Brewer delivered the opinion of the court.

. The amount due, as determined by the judgment of the Supreme Court of the Territory, was over $5000, being the sum of $4590.06, as awarded by the judgment of the District Court, with interest from its date, March 22, 1886, at ten per cent per annum, to February 17, 1888, the date of the judgment of affirmance. This court, therefore, has jurisdiction of the appeal. *Zeckendorf* v. *Johnson*, 123 U. S. 617.

On the merits of the case two questions are presented. It appears that in 1879, Fagan, Harshaw and others were the owners of the Alta mine, and at that time made application to the proper land office for a United States patent thereto, paid the price required by law, and obtained the ordinary certificate of purchase. Thereafter they sold and conveyed the property to the plaintiff. The plaintiff continued to do a large amount of work on the mine up to the year 1882; but having failed in that year to do as much as $100 worth of work thereon, one J. K. Luttrell relocated it about June 1, 1883, and called it the "Ben Butler mining claim," and under this relocation and possession taken in consequence thereof, the ore in controversy was mined and removed. On January 10, 1884, the patent was issued to the original locators, Fagan, Harshaw and others. Upon these facts appellant claims that, although the mine was fully paid for by the locators in 1879, and a certificate of purchase received, inasmuch as the patent did not issue until January 10, 1884, and because the plaintiff failed to do a hundred dollars' worth of work in the year 1882, its rights ceased, and the relocation by Luttrell was valid and vested in him the property. This claim is based upon section 2324, Revised Statutes, which provides among other matters:

" On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year, . . . and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred

shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location."

This language, standing by itself, apparently sustains the contention of the appellant; but a consideration of the provisions of all the statutes respecting mining claims makes it obvious that such is not the true construction. The precise question has never been presented to this court; but the import of several decisions is against appellant's contention. The uniform ruling of the Land Department has been against it, the question having been presented at an early day and fully examined. In the case of the *American Hill Quartz Mine*, reported in Sickels' Mining Laws and Decisions, pages 377 and 385, and also in Copp's U. S. Mineral Lands, page 254, are well-considered opinions by the Commissioner of the General Land Office and the Secretary of the Interior, each holding that, when the price of a mining claim has been paid the equitable rights of the purchaser are complete, and there is no obligation on his part to do further annual work, the delay in issuing the patent being a mere matter occurring in the administration of the Land Department, and the patent when issued by relation taking effect as of the date of the purchase. In the consideration of this question the Secretary of the Interior opens with these pertinent suggestions: "At the outset it is proper to remark that by the mining laws of the United States three distinct classes of titles are created, viz.: 1. Title in fee simple. 2. Title by possession. 3. The complete equitable title. The first vests in the grantee of the government an indefeasible title, while the second vests a title in the nature of an easement only. The first, being an absolute grant by purchase and patent without condition, is not defeasible, while the second, being a mere right of possession and enjoyment of profits without purchase and upon condition, may be defeated at any time by the failure of the party in possession to comply with the condition, viz.: to perform the labor or make the annual improvements required

by the statute. The equitable title accrues immediately upon purchase, for the entry entitles the purchaser to a patent, and the right to a patent once vested is equivalent to a patent issued."

Obviously section 2324 does not provide for the acquisition of title to the land. Its scope and purport are expressed in the opening words, as follows: "The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements:" and then follow several provisions in the nature of limitations on the general authority thus given to miners. Among them is that quoted. That evidently does not refer to the "location," or "manner of recording," but to the "amount of work necessary to hold possession of a mining claim," that is, to continue the mere possessory title: As Congress by section 2319, Rev. Stat. had enacted that "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase by citizens of the United States, etc.," it is not strange that it gave the sanction of law to the regulations which the miners in any locality might establish for their several occupation and working of mining claims; but it is not to be expected that it would also give to them authority to determine how the title to the land itself might be acquired. And so we find that section 2325 provides that "a patent for any land claimed and located for valuable deposits may be obtained in the following manner," and gives thereafter the various steps necessary to be taken to purchase the land. Near its close is this, as to the patent: "If no adverse claim shall have been filed with the register and the receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists." In other words, when the price is paid the

right to a patent immediately arises. If not issued at once, it is because the magnitude of the business in the Land Department causes delay. But such delay, in the mere administration of affairs, does not diminish the rights flowing from the purchase, or cast any additional burdens on the purchaser, or expose him to the assaults of third parties.

The opinion of the Secretary of the Interior has received judicial endorsement in the cases of *Aurora Mining Co.* v. *85 Mining Co.*, in the Circuit Court of the United States for the District of Nevada, 34 Fed. Rep. 515, and *Deno* v. *Griffin*, 20 Nevada, 249. It is a general rule, in respect to the sales of real estate, that when a purchaser has paid the full purchase price his equitable rights are complete, and there is nothing left in the vendor but the naked legal title, which he holds in trust for the purchaser. And this general rule of real estate law has been repeatedly applied by this court to the administration of the affairs of the Land Department of the government; and the ruling has been uniform, that whenever, in cash sales, the price has been paid, or, in other cases, all the conditions of entry performed, the full equitable title has passed, and only the naked legal title remains in the government in trust for the other party, in whom are vested all the rights and obligations of ownership. Thus in the case of *Carroll* v. *Safford*, 3 How. 441, it was held that, after the price of the land had been paid and the purchaser held the receiver's certificate therefor, it was subject to state taxation, although the patent was not then issued. In the opinion, page 461, the court said that "lands which have been sold by the United States can, in no sense, be called the property of the United States. They are no more the property of the United States than lands patented. So far as the rights of the purchaser are considered, they are protected under the patent certificate as fully as under the patent. . . . The government, until the patent shall issue, holds the mere legal title for the land in trust for the purchaser." In *Lessee of French* v. *Spencer*, 21 How. 228, it appeared that a military land warrant had been located on the tract, and the land sold thereafter, but before the issue of the patent, the act under

which the land warrants were granted providing that no claim for military bounties should be assignable or transferable until after the patent had been issued, and that all sales, mortgages or contracts made prior thereto should be void. In that respect it will be seen that the language is not dissimilar to that used in the section before us in the present case. It was held that the patent related back to the time of the location, and that the conveyance intermediate the location and the patent was valid and transferred the title. In *Witherspoon* v. *Duncan*, 4 Wall. 210, there was a donation entry instead of a cash purchase; but the entry having been completed, it was held that the title passed, and that the land was subject to taxation, although the patent did not issue until years thereafter. In *Stark* v. *Starrs*, 6 Wall. 402, 418, this court observed that "the right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued. When, in fact, the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary to cut off intervening claimants." In *Worth* v. *Branson*, 98 U. S. 118, it was held that "a party who has complied with all the terms and conditions which entitle him to a patent for a particular tract of public land, acquires a vested interest therein, and is to be regarded as the equitable owner thereof." And in *Deffeback* v. *Hawke*, 115 U. S. 392, the court gave to a certificate of purchase of mineral lands the same effect that had been theretofore given to cash and donation entries of agricultural lands. In the opinion, on page 405, is found this language: "No adverse claim was ever filed with the register and receiver of the local land office, and the entry was never cancelled nor disapproved by the officers of the Land Department at Washington. The right of the government, therefore, passed to him; and though its deed, that is, its patent, was not issued to him until January 31, 1882, the certificate of purchase which was given to him upon the entry, was, so far as the acquisition of title by any other party was concerned, equivalent to a patent. It was not until the 28th of July following that the probate judge entered the town site. The land had then ceased to be the subject of sale by

the government. It was no longer its property; it held the legal title only in trust for the holder of the certificate. *Witherspoon* v. *Duncan*, 4 Wall. 210, 218. When the patent was subsequently issued, it related back to the inception of the right of the patentee."

There is no conflict in the rulings of this court upon the question. With one voice they affirm that when the right to a patent exists, the full equitable title has passed to the purchaser, with all the benefits, immunities and burdens of ownership, and that no third party can acquire from the government interests as against him. The decision of the trial court was correct. The attempted relocation by Luttrell was void, and gave him no rights of possession or otherwise.

The only other question is as to the measure of damages. The trial court found that the value of the ores, at the time of their conversion by the defendant, was $11,716.65; that after the ores had been mined, and become chattels there had been expended by the defendant and others, in removing the ores from the mine, in assorting the same from the worthless rock, and in transferring the same to the smelter, the sum of $7985.83; and gave judgment for the difference, to wit, $3730.82, and interest. It also found that the entries and trespasses upon the Alta mine were with knowledge of plaintiff's ownership thereof, and that the defendant at the time it received the ores had knowledge that they came from the Alta mine, and were the property of the plaintiff; and there was testimony to support these findings. *Walnut* v. *Wade*, 103 U. S. 683, 688; *Jessup* v. *United States*, 106 U. S. 147, 150.

The contention of the appellant is, that there was error in not crediting it also with the cost of mining the ores. But as it received and converted them with knowledge that they belonged to the plaintiff, the ruling of the trial court was, within the decision in *Wooden-ware Company* v. *United States*, 106 U. S. 432, as liberal to the appellant as it had a right to expect.

*The judgment is affirmed.*