# UNITED STATES v. MOCK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF CALIFORNIA.

No. 233.　Submitted April 21, 1893. — Decided May 1, 1893.

When the defendant in an action of trespass brought by the United States
against him for cutting and carrying away timber from public lands
admits the doing of those acts, the plaintiffs are entitled to at least nom-
inal damages in the absence of direct evidence as to the value of the
standing trees.

It is not to be presumed in such case as matter of course that the govern-
ment permitted the trespass, and any instruction by the court pointing
that way is error.

THIS action was commenced by the filing of a complaint on
May 6, 1884, in the Circuit Court of the United States for the
Northern District of California, in which complaint it was
alleged that the plaintiff was the owner, in 1879, of a certain
tract of land in the county of Fresno, State of California,
describing it, upon which tract of land were growing trees;
that during that year the defendant unlawfully and wrongfully
cut down and carried off certain of these trees, to wit, five
hundred pine trees, and manufactured them into lumber, pro-
ducing 1,500,000 feet of lumber, of the value of $15,000, for
which sum judgment was asked.　Defendant answered with a
general denial.　The case was tried before a jury in April,
1888.　On the trial it appeared, from the testimony of defend-
ant as well as that of other witnesses, that in 1879 defendant
had built a saw-mill adjoining the tract, and operated it for a
little less than three months; that it had a capacity of about
ten thousand feet board measure a day; that he had five white
men and two or three Indians employed at the mill; and that
the timber was cut in the vicinity of the mill.　The defendant
also admitted that he knew that the tract described in the
complaint was government land, and that he did not at any
time enter it as a homestead or preëmption, and that a portion,

though only a small portion, of the timber which he sawed, was cut from that tract. There was the further testimony on the part of the government of two timber agents, that after. the commencement of this action they went upon the land and counted the number of stumps, and found 814 stumps of pine trees, of the diameter of from two to three feet. There was also given in evidence an estimate of the amount of lumber that would be made from a tree of the size indicated by such stumps. There was evidence tending to show the price and value of lumber in that vicinity in the year 1879, but not of the value of standing trees. In its instructions the court referred to the estimate made by the timber agents of the amount of lumber that would have been manufactured from the timber cut upon the premises, and the admission made by the defendant that he had cut some timber, stated that there was no testimony that he had cut all the timber that had been cut thereon, and that the jury had no right to guess, and that unless proof had been offered which created a reasonable certainty in their minds as to the amount of timber cut by the defendant, and its value, the verdict must be for the defendant, and then proceeded as follows :.

" There are two elements entering into these cases. This is an action of trespass, a tort. It is wrong for one person to go on another person's land and cut and remove timber without the consent of the owner; so the going of any person on the public domain and cutting and removing from it timber without the consent of the government is wrong, just as much as if I went on any of your ranches or vineyards, cut and removed the crops without your consent. But there is a vast difference in the character and quality of actions. A gentleman may permit the public to use a portion of his domain as a highway for years, and as long as it is being done with his tacit consent nobody would be held a trespasser for doing so; but when he notifies the public that it must cease, then that tacit right ceases, and anybody who went on there might be justly held as a trespasser. The history of the country in regard to trespassing on the public domain and cutting timber for the use of the people in building their homes upon their farms and for

general domestic purposes may be considered. As I observed, the government is the proprietor of the soil. It has always owned the soil and the timber on it and the mines beneath it; but it is a matter of common knowledge in this country that the country could not have been settled up otherwise than by the practice and custom which has grown up in advance of legislation.

"It is a matter of history that the government permitted the early pioneers, as they went ahead to make their homes for themselves, to go on the public domain and take such timber as was necessary for domestic use, and although there never was any law or license to that effect, it was done with the knowledge of every department of the government — legislative, judicial, and executive. The earliest law that was passed that I remember was in 1833, forbidding, under pains and penalties, the entering on lands that had been reserved on which there were valuable forests of live oak and pine for ship-building. It is possible that there was other legislation following that, but I do not remember any until 1878, and during all that time every department of the government knew how the country was being settled, and that men went on and felled trees with this tacit permission, or, if there was not a tacit permission, at least there was no reprehension of their acts. In this case, in order to judge wisely and fairly of this defendant as to whether he was a wanton trespasser, you will have to take into consideration the concurrent circumstances surrounding his acts. While I wish you to understand that I am not aware of any license having ever been given in the last sixty years to any party to go on the public domain and cut timber, no court has ever held, and no court would be justified in holding, that these men were all criminals who went on and put up a little mill for the purpose of aiding their neighbors in procuring lumber for domestic purposes. I say you will not judge correctly whether these men were wilful and wanton trespassers in the sense in which a trespass is wilful and wanton, unless you take into account the contemporaneous history of the country and these matters, which are familiar to you all. If this party was a wilful

trespasser and cut from the public domain this timber wantonly and maliciously, the government is entitled to recover from him the full value of the timber by him so cut and removed from the public domain, without allowing at all for the increased value that he put upon it; for it will not be permitted that a man shall trespass on your property and commit waste and wanton destruction by removing it, that you shall be merely indemnified for the original value — in other words, you may recover your property and its value wherever you find it, whether the man has added to its value since he got it or not. This case is somewhat different from the case yesterday. This case presents this naked fact: That if you return a verdict for the government, it must be for the value of the lumber manufactured. Now, no evidence has been offered in the case showing the market value of the trees, or if they had any market value one way or the other. There is no evidence in the case to warrant you in concluding that the trees had any market value in 1879 or at any other time. The only evidence offered by the government is as to the value of the timber after it was cut and made into lumber, and in that way this case differs from the case yesterday. Yesterday I instructed you in that case that if you find that although there was a trespass, that it was not wilful, you might determine the value of the timber as it stood on the ground. In this case there is no evidence of that kind."

The jury found a verdict for the defendant, and the government has brought the case here on error.

*Mr. Assistant Attorney General Parker* for plaintiffs in error.

No appearance for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The only errors alleged are in the charge. The specific portions to which the attention of the court was called at the time and exceptions taken are that which refers to the history

of the attitude of the government toward pioneers and others who took timber from government lands for domestic use, and that which declared that no verdict could be returned in favor of the government except for the value of the lumber manufactured. In these there was obvious error. Although there was no direct evidence of the value of the standing trees, yet it did appear that they were manufactured into lumber, and that the lumber had commanded a price of from eight to nine dollars a thousand feet, and when the government proved or defendant admitted that he cut and carried away some of the timber on this tract, the government was entitled to at least a verdict for nominal damages. As to any further right of recovery, see *Wooden-ware Co.* v. *United States,* 106 U. S. 432; *Benson Mining Company* v. *Alta Mining Company,* 145 U. S. 428.

Nor were the observations of the court in reference to th attitude of the government justifiable. Whatever propriety there might be in such a reference, in a case in which it appeared that the defendant had simply cut timber for his own use, or the improvement of his own land, or development of his own mine, (and in respect to that matter, as it is not before us, we express no opinion,) there certainly was none in suggesting that the attitude of the government upheld or countenanced a party in going into the business of cutting and carrying off the timber from government land, manufacturing it into lumber, and selling it for profit; and that was this case. There is no pretence that the defendant cut timber for his own use; he says himself he sold it all. He ran a sawmill, cut timber, manufactured it into lumber, and made profit out of the sale of the lumber. There is nothing in the legislation of Congress or the history of the government which carries with it an approval of such appropriations of government property as that.

The judgment must be reversed, and a new trial ordered.

*Reversed.*