**INDEPENDENCE MINING COMPANY, INC., Plaintiff–Appellant,**

v.

**Bruce BABBITT, Secretary of the Interior; United States Department of the Interior; and The Bureau of Land Management, Defendants–Appellees.**

No. 95–16112.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1996.

Decided Jan. 23, 1997.

R. Timothy McCrum, Crowell & Moring, Washington, D.C.; Earl M. Hill, Marshall Hill Cassas & De Lipkau, Reno, Nevada, for plaintiff-appellant.

Lisa E. Jones, United States Department of Justice, Washington, D.C.; Natalie Eades, United States Department of the Interior, Office of the Solicitor, Washington, D.C., for the federal appellees.

Before CANBY and FERNANDEZ, Circuit Judges, and KING, District Judge.[*]

## OPINION

KING, District Judge:

Independence Mining Company, Inc. ("IMC") appeals the district court's denial of its motion seeking a writ of mandamus or an order compelling the Secretary of the Interior to determine the validity of its mineral patent claims and, if appropriate, issue patents for the claims. IMC contends the district court erred in refusing to direct such actions because IMC had shown the Secretary had enacted certain changes to the procedures for processing mineral patent applications for the purpose and with the effect of unreasonably delaying that process. IMC also argues the district court erred in relying on the Secretary's allegedly *post hoc* explanations for enacting one of those changes.

## STANDARDS OF REVIEW AND JURISDICTION

The extraordinary remedy of mandamus traditionally lies within the court's discretion. *Oregon Natural Resources Council v. Harrell,* 52 F.3d 1499, 1508 (9th Cir.1995) (listing elements of mandamus test); *Garcia v. Taylor,* 40 F.3d 299, 301 (9th Cir.1994), *superseded by statute on other grounds as stated in, Campos v. I.N.S.,* 62 F.3d 311, 314 (9th Cir.1995); *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986). Whether the elements of the mandamus test are satisfied is a question of law reviewed de novo. *Oregon Natural Resources Council,* 52 F.3d at 1508; *Garcia,* 40 F.3d at 301. The trial court retains discretion in ordering mandamus relief, however, even if all elements are satisfied. *Oregon Natural Resources Council,* 52 F.3d at 1508. A trial court abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard. *Garcia,* 40 F.3d at 301; *Fallini,* 783 F.2d at 1345.

The district court had jurisdiction pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## BACKGROUND

IMC is the majority partner in a joint venture that operates the Jerritt Canyon Mine and Mill in Elko County, Nevada. Between February, 1991 and September, 1992, IMC filed twelve applications for mineral patents covering a total of seventy-two lode mining claims and 156 mill sites.[1] As of August 31, 1994, no patents had been issued for any of the claims.[2]

As a result of the delay, IMC filed a complaint in the United States District Court for the District of Nevada on August 31, 1994. The complaint alleged, *inter alia,* that appellees Bruce Babbitt, Secretary of the United States Department of the Interior ("Secretary"), the United States Department of the Interior ("DOI"), and the Bureau of Land Management ("BLM") (collectively, the "government") unreasonably and intentionally delayed processing IMC's mineral patent applications filed pursuant to the General Mining Law of 1872. The bases for this charge are two procedural changes (hereaf-

---

[*] Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

1. Mill sites are "nonmineral land ... [which] is used or occupied by the proprietor ... for mining or milling purposes." 30 U.S.C. § 42(a).

2. Some of the mill sites which are the subject of IMC's applications are located on certain federal land which has now been granted to IMC in fee through a land exchange under Section 206 of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1716. While the Secretary has not taken action on the affected mill site applications, the finalization of separate litigation over the validity of the land exchange would moot IMC's applications for those mill sites which are located on the exchanged land.

ter the "administrative changes") which the Secretary instituted. He terminated a four-month pilot program allowing private contractors to perform mineral examinations, and initiated a "secretarial review" procedure, described by the district court in its opinion (*IMC*, 885 F.Supp. at 1359 n. 6), that requires a review up the chain of command before issuance of a patent.

In conjunction with its complaint, IMC filed a motion seeking an order of mandamus under the Mandamus and Venue Act of 1962 ("MVA"), 28 U.S.C. § 1361, or an order compelling the Secretary to make a determination on the applications pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, within 90 days. This was the only relief IMC sought in its complaint. Accordingly, the district court treated IMC's motion as a *de facto* motion for summary judgment. The government then filed a cross-motion for summary judgment.

The district court denied IMC's motion and granted the government's motion. Applying the six-factor test announced in *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79–80 (D.C.Cir.1984) ("*TRAC*"),[3] it concluded that the Secretary's delay was not sufficiently unreasonable to warrant the requested relief. *Independence Mining Co. v. Babbitt*, 885 F.Supp. 1356, 1363–64 (D.Nev.1995) (hereinafter "*IMC*"). IMC filed a motion for reconsideration arguing that the court erred in denying mandamus relief and in applying the *TRAC* factors. IMC contended that because it had acquired "vested" rights in the patents, the Secretary had a non-discretionary duty to issue such patents. It also challenged the Secretary's right to implement the administrative changes which IMC contended had the effect of unreasonably delaying the process.

The court denied this motion, holding that the rights to such patents vest only after the Secretary determines the validity of the patent applications. *IMC*, 885 F.Supp. at 1365. Moreover, the court found the Secretary's administrative changes to be within his plenary powers over public land. *Id.* at 1369–

70. The court concluded that the extraordinary relief of mandamus, which would require "reaching into an agency of the executive branch and dictating the details of its internal operations," was not warranted in this case. *Id.* at 1364. This appeal follows.

## DISCUSSION

### I. Patent Application Process Under the General Mining Law

 Under the General Mining Act of 1872, citizens may locate mining claims on public lands open to location. 30 U.S.C. §§ 22–54. If a discovery of a "valuable mineral deposit" is made, the claim can be held indefinitely so long as the annual assessment work is performed, the necessary filings are made, fees are paid, and a valuable mineral deposit continues to exist. *See Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963). The claimant has the exclusive right to possession and enjoyment of all the surface included within the lines of the locations, but the United States retains title to the land. *California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 575, 107 S.Ct. 1419, 1422, 94 L.Ed.2d 577 (1987). This possessory interest entitles the claimant to "the right to extract all minerals from the claim without paying royalties to the United States." *Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir.1993).

The holder of a mining claim may apply to the DOI to obtain a patent which, if issued, conveys fee title. After filing the patent application and paying the purchase price, the Secretary signs a "first half of mineral entry final certificate" (FHFC), which is the DOI's administrative recording of an applicant's compliance with the initial paperwork requirement of the Mining Law.[4] But, a patent is not issued until there has been a determination that the claim is valid.

Before a determination of validity can be made, a mineral examiner must do a field examination; collect and analyze samples; estimate the value of the mineral deposit and the cost of extracting, processing and mar-

---

**3.** *See infra* at note 7.

**4.** The DOI has now issued FHFCs for all of IMC's claims.

keting the minerals, including the costs of complying with any environmental and reclamation laws.

Upon completion of the mineral report, all patent applications undergo legal and secretarial review, and if approved, the patents will issue.[5]

## II. MVA/APA

■ The MVA provides district courts with mandamus power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Similarly, the APA allows a court to compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts may grant mandamus relief ordering an agency to act under the MVA only if the three elements of the general mandamus test are satisfied. On the other hand, courts generally apply the so-called *TRAC* factors in deciding whether to order relief in claims of agency delay brought under the APA. *See TRAC*, 750 F.2d at 79–80.

■ Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the MVA, "in essence," as one for relief under § 706 of the APA. *See Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n. 4., 106 S.Ct. 2860,

2866 n. 4, 92 L.Ed.2d 166 (1986). Because the relief sought is essentially the same, in the form of mandamus, we elect to analyze IMC's entitlement to relief under the APA.[6]

## III. The Administrative Procedure Act

■ The APA provides that a court may compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). We look to the so-called *TRAC* factors[7] in assessing whether relief under the APA is appropriate.

### A. Rule of Reason and Congressional Timetable

■ Both parties agree that, under the first *TRAC* factor, the timeliness of an agency's actions is governed by a "rule of reason." However, IMC argues the district court failed to give sufficient weight to the General Mining Law's statutory scheme in supplying the content for this rule of reason, as provided in the second *TRAC* factor. But, until this year, the General Mining Law provided no express timetable or deadline for the issuance of the patents. At most, the statute implies that the issuance must be completed within a reasonable time, or as the district court held, "expeditiously" under the circumstances.

IMC argues the statute provides an additional or different "content" for the rule of reason. Specifically, IMC asserts that, under the statutory scheme, absolute rights to

---

5. Three of IMC's twelve applications have mineral examinations approved by the BLM and are now awaiting secretarial review. No mineral reports have been prepared for the remaining applications. *IMC*, 885 F.Supp. at 1359.

6. Although the parties dispute whether the Secretary's inaction involves a discretionary or ministerial act, we are not convinced that a decision on that issue is dispositive of this case because, at some level, the government has a general, non-discretionary duty to process the applications in the first instance. *See Marathon Oil v. Lujan*, 937 F.2d 498, 501 (10th Cir.1991) (citing *Wilbur v. Krushnic*, 280 U.S. 306, 319, 50 S.Ct. 103, 105, 74 L.Ed. 445 (1930)). In other words, even if the acts were discretionary, the Secretary cannot simply refuse to exercise his discretion. Moreover, we question the applicability of the traditional mandamus remedy under the MVA where there is an adequate remedy under the APA.

7. The so-called *TRAC* factors are:

(1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80 (citations omitted).

the patents vest upon application and the Secretary has a ministerial duty to issue the patents. Under this characterization of the statutory scheme, IMC argues that the rule of reason within this context yields a tight timetable for agency action.

IMC raises two separate but related questions. First, we must decide what, if any, "rights" to the patents "vest" upon the filing of the applications that would immediately entitle IMC to the issuance of the patents. Second, we consider whether the issuance of the patents is a ministerial act.

As to the first issue, we have recently held that rights to a patent do not vest upon the filing of the application if the Secretary contests the validity of the patent and thus delays its issuance. *Swanson*, 3 F.3d at 1350, 1354. We reasoned that "[u]ntil a patent is issued, the government has broad authority to manage public lands," because of the Secretary's broad plenary powers over those lands. *Id.* at 1352. In light of this broad power, we held that, until the patent actually issued, the government retained the authority to remove those lands from mining claims and patents. *Id.*

In this case, unlike *Swanson*, the Secretary has not officially challenged the validity of the patents. Rather, the Secretary is in the process of determining the validity of the patents, which process is causing the delay challenged here. Because the Secretary is, in essence, in the process of determining whether he *will* challenge the patents' validity, *Swanson*'s holding applies *a fortiori* in this case. In other words, if rights to a patent do not vest pending challenge to its validity, no rights can vest before the Secretary has decided whether to contest the patent claim.

IMC relies primarily on *Benson Mining and Smelting Co. v. Alta Mining and Smelting Co.*, 145 U.S. 428, 431–32, 12 S.Ct. 877, 878–79, 36 L.Ed. 762 (1892), for its contention that its rights to the patents vest upon application. However, we rejected this very argument in *Swanson*. Specifically, we determined that *Benson* held the right to a patent arises only after the party seeking the patent has complied with all the terms and conditions entitling it to that patent. Because validity was one of those "terms and conditions," *Benson* did not alter our ultimate conclusion in *Swanson*. *Swanson*, 3 F.3d at 1354. For similar reasons, we conclude that IMC's rights to the patents did not vest upon application.

Moreover, issuance of the patents prior to a validity determination is not a ministerial act. An agency "ministerial act" for purposes of mandamus relief has been defined as a clear, non-discretionary agency obligation to take a specific affirmative action, which obligation is positively commanded and "so plainly prescribed as to be free from doubt." *See, e.g., Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3264, 97 L.Ed.2d 763 (1987); *United States v. Walker*, 409 F.2d 477, 481 (9th Cir.1969). The Secretary has no such ministerial duty to issue a patent prior to a validity determination. Specifically, when the "Department has not yet determined officially that all conditions to issuance of the patents have occurred[,] ... [it] has not yet reached the point when it is left with the purely ministerial act of issuing the patent." *Marathon Oil*, 937 F.2d at 501. *Accord Swanson*, 3 F.3d at 1353.

The cases cited by IMC do not dictate a contrary result. IMC relies primarily on *South Dakota v. Andrus*, 614 F.2d 1190 (8th Cir.), *cert. denied*, 449 U.S. 822, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980), for its contention that the issuance of a mineral patent is a ministerial act. However, *Andrus*, an Eighth Circuit case, cites prior Supreme Court cases and a decision from the Interior Board of Land Appeals for the proposition that the issuance of a mineral patent was only ministerial to the extent the application satisfied the requirements of the statute. As discussed above, satisfaction of those requirements would *a fortiori* include a determination that the patent is valid. *See, e.g., United States v. Kosanke Sand Corp.*, 12 I.B.L.A. 282, 290 (1973) (holding that "*[u]pon satisfaction of the requirements of the statute*, the holder of a valid mining claim has an absolute right to a patent ..., and the actions taken by the Secretary of the Interior ... are not discretionary; issuance of a patent

can be compelled by a court order." (emphasis added)).

IMC argues the district court erred in relying on *In re City of Virginia Beach*, 42 F.3d 881 (4th Cir.1994), for its decision not to grant relief, because, unlike here, the agency determination in *Virginia Beach* involved broad discretion. We disagree. The Secretary's validity determination requires considerable judgment and discretion to evaluate and assess the results of the mineral examination, and to ultimately conclude whether the statutory requirement of a "valuable discovery" has been met.[8] IMC mistakes the "limits" of the statutory scheme under the General Mining Law; the district court did not err in applying *In re City of Virginia Beach*.

More importantly, on April 26, 1996, Congress enacted the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (the "Act"). Section 322(c) of the Act directs the Secretary to take actions necessary to make a final determination regarding 90 percent of all pending patent applications which are not otherwise subject to the moratorium in section 322(a) and (b)[9] within five years of the enactment of the Act.

Regardless of any prior speculation as to the statutory content which should inform our application of the rule of reason, Congress has now supplied the exact timeframe within which the Secretary is required to act. Even in the face of the Secretary's public pronouncements and understanding the circumstances under which patent applications have been processed, Congress elected to grant the Secretary a specific period of time to accomplish his validity determinations.

In light of the foregoing, we reject IMC's arguments that the first two *TRAC* factors militate in favor of judicial intervention at this time. To the contrary, the Act weighs heavily against court directed relief at this time.

## B. Serious Economic Harm and the Public Welfare

IMC contends the district court erred in determining that the overlapping third and fifth *TRAC* factors did not support relief under the APA. These factors provide that:

> delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; [and] ... the court should also take into account the nature and extent of the interests prejudiced by delay....

*TRAC*, 750 F.2d at 80. On appeal, IMC argues that the Secretary's delay "has cast a cloud of uncertainty over IMC's mining claims and discourages new capital investment." In addition, the delay allegedly "creates ·a severe disincentive for the massive ongoing capital investments needed to operate th[e] mine." IMC contends that, because the mine employs 600 people and supports a major part of the local economy and tax base in Elko County, the Secretary's delay, by threatening the mine's economic prosperity, also threatens the public welfare.

But, it is undisputed that IMC need not ·obtain patents to continue its mining operation. *See United States v. Locke*, 471 U.S. 84, 86, 105 S.Ct. 1785, 1788, 85 L.Ed.2d 64 (1985). Moreover, IMC has stated that during the period from June, 1993 to June, 1994, while the applications were pending, the Mine· yielded 346,559 ounces of gold and maintained an estimated payroll of $23 million. Confronted with these undisputed facts, the district court ruled that, although "serious," the potential impact of IMC's economic concerns on public health and welfare was no more than speculative. Specifically, the court held that IMC had not provided any evidence to support its assertions that its employees' jobs were in "*direct or immedi-*

---

8. In its reply, IMC argues that the validity determination itself is non-discretionary because it involves an objective test. In doing so, IMC confuses two different concepts. Specifically, merely because a task involves an "objective" standard of review does not mean that it is a ministerial act. For example, while a determination of probable cause employs an objective stan-

dard, such task can hardly be characterized as a ministerial act.

9. IMC's applications at issue on this appeal are not subject to the moratorium in section 322(a) and (b).

*ate*" danger due to the alleged economic harm. *IMC,* 885 F.Supp. at 1366.

We agree with the district court's conclusion. On appeal, IMC has not pointed to any additional evidence in the record to support its assertion that its employees' jobs are being directly threatened by the Secretary's delay. In light of this, and in light of the apparent prosperity of the mine, the district court did not err in determining that the third and fifth *TRAC* factors did not support mandamus in this case.

## C. Intentional Delay and Bad Faith

IMC also posits that the district court erred in analyzing the fourth and sixth *TRAC* factors. The fourth *TRAC* factor provides that the court may consider the agency's competing priorities. *TRAC,* 750 F.2d at 80. The sixth *TRAC* factor states that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* (internal quotations omitted). However, as the district court explained, the District of Columbia Circuit has suggested that "[i]f the court determines that the agency [has] delay[ed] in bad faith, it should conclude that the delay is unreasonable." *IMC,* 885 F.Supp. at 1367 (changes in original) (quoting *Cutler v. Hayes,* 818 F.2d 879 (D.C.Cir.1987)). The District of Columbia Circuit later explained that "[w]here [an] agency has manifested bad faith, as by singling someone out for bad treatment or asserting utter indifference to a congressional deadline, the agency will have a hard time claiming legitimacy for its priorities." *In re Barr Labs., Inc.,* 930 F.2d 72, 76 (D.C.Cir.) (citing *In re Monroe Communications Corp.,* 840 F.2d 942, 946–47 (D.C.Cir.1988)), *cert. denied,* 502 U.S. 906, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991).

In considering these factors, the district court rejected IMC's argument that the Secretary's administrative changes demonstrated an intent to delay in bad faith. *IMC,* 885 F.Supp. at 1367. The court's order on reconsideration specifically disavowed IMC's assertion that it had found the Secretary's administrative changes were expressly intended for the purpose of delay. *Id.* This ruling substantially undermines IMC's arguments that the administrative changes were tantamount to an intent to delay in bad faith.

Moreover, the district court modified its prior order by acknowledging that the Secretary's motivations were, at least, relevant. *Id.* But, even with motivation as a factor in the equation, the district court concluded that, under a deferential standard of review, the Secretary's administrative changes were within his powers and supported by reasonable explanations. *Id.* at 1367–70. In light of this conclusion, and in the absence of any finding of actions taken for the purpose of delay, the court declined to find unreasonable delay. *Id.*

On appeal, IMC asserts the district court mistakenly concluded that bad faith would be present only when a party is singled out by the agency for mistreatment. IMC argues that, under *In re Barr Labs.,* 930 F.2d at 76, bad faith can be exhibited by "asserting utter indifference to a congressional deadline," regardless of whether the delay harms one party or many parties. Specifically, IMC argues the Secretary has shown utter indifference to congressional mandates by intentionally delaying the application process in a manner clearly contrary to Congress' intent.

We agree that IMC's claims of intentional delay deserve careful consideration, especially on a motion for summary judgment. To grant summary judgment against IMC, as the district court did, it must have accepted IMC's factual allegations as true.

Here, although the district court said the Secretary's motives were at least relevant, it seems to have concluded that even if the Secretary had acted with the intent to delay, his inaction should not be disturbed because the administrative changes were within the Secretary's authority, and the court should apply an extremely deferential standard of review. *IMC,* 885 F.Supp. at 1368–70.

We question whether the Secretary is free to make otherwise allowable administrative changes with the intent to defeat the mandate of the law by making the process so slow and/or cumbersome as to ensure that no patents would issue. But, in this case, even if we were to credit IMC's allegations, IMC

cannot show that it is entitled to mandamus type relief when Congress has stepped in and formulated a specific timeframe for completion of the Secretary's review process.[10] In essence, Congress has now set forth a new mandate within which the Secretary shall act. Judicial intervention under these circumstances would not result in agency adherence, but may well be contrary, to congressional mandate. We decline to order the Secretary to obey a timeframe which Congress has since modified. Moreover, there is no indication that the Secretary is unwilling to comply with the Act. If anything, it appears that the Secretary has obeyed the mandates of the Act by filing the required plan for processing the applications.[11]

## IV. *Post Hoc* Rationalization

▋ In opposition to IMC's motion for reconsideration before the district court, the government submitted a declaration by DOI Solicitor John Leshy which stated that a reason for cancelling the private mineral examiner pilot program, one of the two administrative changes IMC challenges, was a concern over potential conflicts of interest.[12] IMC asserts this explanation constituted a prohibited *post hoc* rationalization for the agency's action on which the district court should not have relied.

▋ IMC mistakes the government's supplemental evidence submitted on reconsideration as a *post hoc* rationalization. The rule barring consideration of *post hoc* agency rationalizations operates where an agency has provided a particular justification for a determination at the time the determination is made, but provides a different justification

for that same determination when it is later reviewed by another body. *See Industrial Union Dep't, AFL–CIO v. American Petroleum Inst.,* 448 U.S. 607, 631 n. 31, 100 S.Ct. 2844, 2858 n. 31, 65 L.Ed.2d 1010 (1980); *Securities and Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). However, this rule has been developed in the context of a court's duty to set aside a "final agency decision" if based on a *post hoc* rationalization. Such a "final agency decision," generally required for judicial review of agency actions, provides the court with a date certain by which it can analyze the agency's justifications. It also identifies the particular decision being challenged and the justifications proffered at that time.

Judicial review of an agency's actions under § 706(1) for alleged delay has been deemed an exception to the "final agency decision" requirement. *See, e.g., Public Citizen v. Bowen,* 833 F.2d 364, 367 (D.C.Cir. 1987); *Public Citizen Health Research Group v. Commissioner, FDA,* 740 F.2d 21, 30–32 (D.C.Cir.1984). Under this exception, the court is examining an agency's actions *prior to a final agency decision* for purposes of measuring agency delay. Accordingly, there is no date certain by which to evaluate an agency's justifications for its actions. Moreover, without a "final agency decision," there is no official statement of the agency's actions and relevant justifications. Leshy's declaration was not a *post hoc* rationalization. It was merely supplemental evidence submitted in support of appellee's position on IMC's motion for reconsideration. Accordingly, the district court was not prohibited from consid-

---

**10.** While we credit IMC's characterization of the Secretary's actions for purpose of our review of the district court's decision on summary judgment, we do not mean to imply that we hold any view of whether the Secretary's actions were taken with the intent to delay.

**11.** The Act requires, among other things, that

(1) within three months of the enactment of this Act, [the Secretary shall] file with the House and Senate Committees on Appropriations and the Committee on Resources of the House of Representatives and the Committee on Energy and Natural Resources of the United States Senate a plan which details how the

Department of the Interior will make a final determination as to whether or not an applicant is entitled to a patent under the general mining laws....

Pub.L. No. 104–134, § 322(c), 110 Stat. 1321 (1996). On September 16, 1996, pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the government informed us that the Secretary had prepared and submitted the required plan to Congress in July, 1996.

**12.** In enacting the Act, Congress has expressly permitted the use of private contractors selected by the BLM to conduct mineral examinations. Pub.L. No. 104–134 § 322(d), 110 Stat. 1321 (1996).

ering it, especially where the court permitted both sides to submit supplemental evidence. *IMC*, 885 F.Supp. at 1365 n. 1. There was no reliance on any *post hoc* rationalizations in this case.

## CONCLUSION

In the final analysis, we weigh all the relevant factors and determine whether they point in favor of court intervention. Having balanced the competing interests, and assessed the applicability of the relevant factors to the facts and circumstances of this case, we conclude that the district court did not err in denying mandamus relief. The district court's judgment is **AFFIRMED**.