**R.T. VANDERBILT COMPANY, Plaintiff–Appellant,**

v.

**Bruce BABBITT, in his official capacity as Secretary of the United States Department of the Interior; Bureau Of Land Management; United States Department Of The Interior, Defendants–Appellees.**

No. 96–15732.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1997.

Decided May 14, 1997.

Lisa E. Jones, United States Department of Justice, Washington, D.C., for defendants-appellees.

Steven P. Quarels and R. Timothy McCrum, Crowell & Moring, Washington, D.C., for amicus.

Before: WIGGINS, TROTT, Circuit Judges, and ZAPATA,* District Judge.

## OPINION

WIGGINS, Circuit Judge:

R.T. Vanderbilt Company ("Vanderbilt") sought an order from the district court directing the Secretary of the Interior ("Secretary") to continue processing Vanderbilt's mining patent applications. The district court granted summary judgment for the Secretary. We have jurisdiction under 28 U.S.C. § 1291. We AFFIRM, although for somewhat different reasons than those stated by the district court.[1]

### BACKGROUND

#### General Mining Law Overview

Under the General Mining Act of 1872, 30 U.S.C. §§ 21–54, citizens can enter and use public lands for mining exploration. If valuable mineral deposits are found, a mining claim may be filed for a lode or placer claim, as well as a nearby mill-site. *Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir. 1993). Possessory interest in a claim can be held indefinitely upon discovery of valuable mineral deposits provided that annual assessment work is performed, all necessary filings and fee payments are made, and the valuable mineral deposit continues to exist. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 506 (9th Cir.1997).

A claimholder may apply to the Interior Department to obtain a patent which, if obtained, conveys fee title. *Id.* After the claimholder files the application and pays the purchase price, the Secretary signs

Gary D. Babbitt, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for plaintiff-appellant.

* Hon. Frank R. Zapata, United States District Judge for the District of Arizona, sitting by designation.

1. We may affirm the judgment on any alternative ground supported by the record. *Marino v. Vasquez* 812 F.2d 499, 508 (9th Cir.1987).

a "first half of mineral final certificate," or FHFC. *Id.* We have described the FHFC as the Secretary's "administrative recording of an applicant's compliance with the initial paperwork requirement of the Mining Law." *Id.* The patent does not issue until the claim is determined to be valid; before the determination, a mineral examiner must complete a mineral report and the Secretary must review the entire application. *Id.*

## The Appropriations Act

As part of the Department of the Interior and Related Agencies Appropriations Act of 1995 ("Appropriations Act"), Congress imposed a moratorium on processing mining patent applications unless revisions were made to the General Mining Act of 1872 by the time Congress adjourned *sine die.*[2] Pub.L. No. 103–332 § 112, 108 Stat. 2499, 2519 (1994). The moratorium was set forth in Section 112 of Appropriations Act:

> If the House–Senate Conference Committee on H.R. 322 fails to report legislation which is enacted prior to the adjournment of the 103d Congress sine die, none of the funds appropriated or otherwise made available pursuant to this Act shall be obligated or expended to accept or process applications for a patent for any mining or mill site claim located under the general mining laws or to issue a patent for any mining or mill site claim located under the general mining laws.

*Id.*

In section 113 of the Appropriations Act, Congress enacted a grandfather clause for certain patent applications already filed:

> The provisions of section 112 shall not apply if the Secretary of the Interior determines that, for the claim concerned: (1) a patent application was filed with the Secretary on or before the date of enactment of this Act, and (2) all requirements established under ... (30 U.S.C. 29 and 30) for vein and lode claims and ... (30

U.S.C. 35, 36, and 37) for placer claims, and ... (30 U.S.C. 42) for mill site claims, as the case may be, were fully complied with by the applicant by that date.

Appropriations Act § 113, 108 Stat. at 2519. It is undisputed that the date of enactment, and thus the effective date for the grandfather clause, was September 30, 1994.

Congress adjourned *sine die* on December 1, 1994,[3] without having enacted legislation from the Conference Committee on H.R. 322. Indeed, Congress has not yet enacted any revisions. Instead, Congress has extended the moratorium and the accompanying grandfather clause through the present in subsequent appropriations acts, employing language with no differences relevant to this case. *E.g.,* Pub.L. No. 104–208, 110 Stat. 3009 (1996).

## Factual Overview

In 1993, Vanderbilt filed patent applications for a placer and two mill-site claims in Peshing County, Nevada.[4] The Secretary authorized notice publication of Vanderbilt's applications on June 27, 1994. On September 29, 1994, the day before Congress enacted the Appropriations Act, the Secretary issued a decision requiring Vanderbilt to file within 30 days additional information and to remit payment of the purchase price on both claims.

Vanderbilt mailed the additional materials and checks for the purchase price to the Bureau of Land Management of the Department of Interior ("BLM") Nevada State Office on October 20, 1994. The Secretary received the checks October 24, 1994, but returned them on the grounds that the moratorium suspended all further processing of Vanderbilt's applications. Following unsuccessful appeals within the BLM, Vanderbilt sought a writ of mandamus in district court pursuant to 28 U.S.C. § 1361 or alternatively an order compelling the Secretary to process its applications pursuant to the Administra-

---

**2.** Adjournment *sine die* means final adjournment for the session. *See Black's Law Dictionary* 1385 (6th ed.1990).

**3.** *See* 140 Cong. Rec. S15,470–71 (Dec. 1, 1994).

**4.** Generally, placer claims include "all forms of deposit, excepting veins of quartz, or other rock in place." 30 U.S.C. § 35. Mill-site claims include certain non-mineral lands used for mining, milling, or related purposes. 30 U.S.C. § 42.

tive Procedure Act ("APA"), 5 U.S.C. § 706. The matter was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and former District of Nevada Local Rule 500–5.

The magistrate judge concluded that Vanderbilt's applications did not qualify for treatment under the grandfather clause to the moratorium. Thus, she concluded that the Secretary reasonably refrained from processing Vanderbilt's patent applications, even though she concluded that the Appropriation Act's moratorium began on December 1, 1994, not on October 1, 1994. She also held that equitable title had not vested in Vanderbilt. She therefore recommended the district court enter summary judgment in favor of the Secretary. The district court adopted the magistrate judge's recommendation, and this appeal followed.

## ANALYSIS

█ Vanderbilt appeals the district court's refusal to order the Secretary to process Vanderbilt's patent applications pursuant to the grandfather clause of the moratorium and to recognize that Vanderbilt has equitable title to the claims. In a mandamus action, district courts may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an extraordinary remedy traditionally within a district court's discretion. *Independence*, 105 F.3d at 505. Nonetheless, whether the elements of the mandamus test [5] are satisfied is a question of law that we review *de novo*. *Id.* In *Independence*, we recognized that mandamus relief and relief under the APA are "in essence" the same, *id.* at 507 & n. 6; as a result we elected to analyze the claim under the APA where there is an adequate remedy under the APA. In this case, we will follow *Independence* in analyzing the claims under the APA.

The APA provides that a court may compel "agency action unlawfully withheld or unrea-

sonably delayed." 5 U.S.C. § 706(1). Under the APA, we review agency actions to ensure they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "A court should accept the 'reasonable' interpretation of a statute chosen by an administrative agency except when it is clearly contrary to the intent of Congress." *Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1525 (9th Cir.1995) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984)). However, where the statute's language is unambiguous, the agency, like the courts, must follow Congress's express will. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781–82; *Swanson*, 3 F.3d at 1352.

I. *Moratorium's Effect on the Secretary's Duty to Continue to Process the Mining Claims*

A. *Applicability of the Grandfather Clause*

█ Vanderbilt contends that because its applications fall within the moratorium's grandfather clause, the Secretary should not have stopped processing them. The district court held that Vanderbilt had not "fully complied" with the enumerated statutory requirements for the grandfather clause by its effective date.

Vanderbilt contends that it satisfied the second prong of section 113 because it had already filed a "complete" application, as evidenced by the BLM's allowance of publication of Vanderbilt's applications in June 1994. *See* Bureau of Land Management, U.S. Dep't of Interior, Manual H–3860–1, *Processing Mineral Patent Applications* IV–1 ("[P]ublication ... should be ordered at such time as the application is complete.") (1991). It argues that Congress would not have placed the application at the mercy of affirmative actions of the Secretary; thus, "fully com-

---

5. The three elements of the mandamus test are "(1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Oregon Natural Resources Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir.1995) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986) (internal quotations omitted)). In addition, the district court may exercise its discretion not to grant mandamus even if the factors are satisfied. *Id.*

plied" in the second prong of section 113 refers only to those requirements that can be independently complied with by the applicant-i.e., only the pre-publication steps.

The fact that Vanderbilt's application was "complete" when filed does not necessarily mean it "fully complied" with all the statutory requirements referred to in the second prong of section 113. *See* Appropriations Act § 113, 108 Stat. at 2519. The language of section 113 does not expressly limit the requirements to steps that the applicant can perform unilaterally. Rather, section 113 simply cites specific statutes that enumerate multiple requirements.

One of the referenced statutory requirements for both placer and mill-site claims is payment of the purchase price. 30 U.S.C. §§ 35 (placer claims) & 42 (mill-site claims). Vanderbilt did not even tender payment until October 20, 1995, well after the effective date of the grandfather clause. Requiring payment of the purchase price enumerated in the statutes cited in the second prong of section 113 is not an arbitrary reading of section 113. The Secretary's construction of section 113 that all the requirements of the cited code sections be satisfied is a reasonable construction of the statute. Thus, the district court did not err in upholding the Secretary's interpretation of the grandfather clause; Vanderbilt is not exempted from the moratorium.

### B. *Effective Date of the Moratorium*

■ The parties also dispute the starting date of the moratorium on processing patent applications, which determines whether Vanderbilt submitted payment of the purchase price for its claims before or after the moratorium began and whether the Secretary should have continued to process the applications until December 1, 1994. The district court held that section 112 unambiguously set the starting date of the moratorium as the date of adjournment *sine die*—that is, December 1, 1994. We disagree.

The Secretary argues that section 112 set October 1, 1994, as the starting date for the moratorium, unless and until Congress enacted the required legislation before adjourning *sine die.* At the least, he contends, the

language is ambiguous. Like Vanderbilt, the district court acted as if the asserted ambiguity was the date of adjournment *sine die;* in fact, the ambiguity identified by the Secretary was whether the effective date was the date of adjournment *sine die* at all (whatever that date turns out to be) or whether it was the date of enactment. Section 112 imposes a moratorium subject to a condition subsequent-enactment of mining reform legislation by Congress. *See* Appropriations Act § 112; 108 Stat. at 2519. We agree with the Secretary that the conditional language of section 112 describes the date by which Congress had to enact mining reform legislation in order to stop the moratorium; it does not define the moratorium's effective date.

The Secretary articulated reasonable bases in support of his interpretation that the moratorium started on October 1, 1994. First, the Secretary points to the language which provides that "none of the funds" under the Appropriations Act shall be expended if the new legislation is not passed. The Appropriations Act does not allow partial funding to process applications (i.e., until adjournment *sine die* ); the language says none of the funds.

Second, because the effective date was ambiguous on the face of section 112, the Secretary reasonably relied on comments by Senator Byrd in reporting on the House–Senate Conference Committee work: stating that the moratorium would be "repealed if mining law reform legislation . . . [was] enacted prior to *sine die* adjournment of the 103d Congress." 140 Cong. Rec. S13,540 (Sept. 28, 1994); *see also* 140 Cong. Rec. H9546 (Sept. 22, 1994). Senator Byrd's comment indicates that the moratorium was effective upon enactment of the Appropriations Act, with a contingency to repeal it; his comment does not support the view that the moratorium would begin only if and when *sine die* adjournment occurred without having passed reform legislation.

Third, the Secretary reasonably looked to the effective date of the grandfather provision in section 113 to support its interpretation of the effective date of section 112. If section 112 is construed to begin the morato-

rium on the date of adjournment, a two-month gap is created between the cutoff date for grandfathered applications and the moratorium itself. This construction would create a duty, lasting but two months, to process certain applications. This would be an odd result, and we are loathe to force the Secretary to give section 112 a construction that requires it.

Accordingly, we conclude that the Secretary's interpretation is a reasonable interpretation of the statute, even if it is not the only possible one. The Secretary's interpretation was thus entitled to deference, and the district court erred in not deferring to it. Nonetheless, the district court did properly grant judgment for the Secretary. Despite its conclusion that the moratorium started on December 1, 1994, the district court concluded that the Secretary reasonably delayed processing Vanderbilt's applications between October 1 and December 1, 1994. Because we hold that the moratorium began on October 1, 1994, we need not address the district court's analysis of the reasonableness of any delay in processing Vanderbilt's applications between October 1, 1994, and December 1, 1994.

### C. *Retroactivity*

■ Vanderbilt also contends that the Secretary's interpretation of the moratorium and the grandfather clause violates the presumption against retroactivity because it impacts applications filed before the date of enactment. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270–74, 114 S.Ct. 1483, 1500–01, 128 L.Ed.2d 229 (1994). This reasoning is flawed for two reasons. First, the "retroactive" effect is not really retroactive-it does not impact the applicant's current possessory interest in the claims, but rather affects only its prospective interest in further property rights in the claims. Second, the Appropriations Act's language is not limited to new applications. Section 112 expressly precludes spending not only to accept applications, but also to process applications or to issue patents, with section 113 excepting only

those pending applications that have "fully complied with" certain statutory requirements.

### II. *Recognition of Equitable Title*

Vanderbilt also seeks an order recognizing that it acquired equitable title [6] to the claims, arguing that it fully complied with the statutory requirements for a patent at the time it filed its valid applications and tendered the proper payment. This issue is straightforward as a result of our holding that the moratorium started on October 1, 1994; by that date, Vanderbilt had not yet tendered the payment upon which it bases its claim to equitable title.

Vanderbilt argues that, notwithstanding the moratorium, its equitable title vested on October 24, 1994. It contends that the moratorium only stopped the Secretary's processing of applications, but that the moratorium did not prevent Vanderbilt from acquiring equitable title under the General Mining Act of 1872 simply by its act of submitting valid applications and tendering the purchase price.

■ We reject this contention for two reasons. First, the moratorium prevented Vanderbilt from acquiring any additional interest in its mining claims after October 1, 1994. Vanderbilt could not continue to take steps, such as tendering payment, to acquire equitable title after the moratorium began. Second, equitable title does not vest unless the Secretary determines that the claims are valid.

■ A claimholder acquires the right to a patent when it does all that is required of it, not at the time its compliance is recognized. *Wyoming v. United States*, 255 U.S. 489, 500–01, 41 S.Ct. 393, 396, 65 L.Ed. 742 (1921); *Benson Mining & Smelting Co. v. Alta Mining & Smelting Co.*, 145 U.S. 428, 431–33, 12 S.Ct. 877, 878–79, 36 L.Ed. 762 (1892). Thus, a claimholder has equitable title once the price of a *valid* mining claim is paid. *Benson Mining*, 145 U.S. at 430, 12 S.Ct. at 878; *Swanson*, 3 F.3d at 1353; *see*

---

6. We use the phrases "right to a patent," "vested interest," and "equitable title" interchangeably. *See Benson Mining & Smelting Co. v. Alta Mining*

*& Smelting Co.*, 145 U.S. 428, 433, 12 S.Ct. 877, 879, 36 L.Ed. 762 (1892).

*also* 30 U.S.C. § 29 (stating for vein or lode claims that "it shall be assumed that applicant is entitled to patent, upon payment to proper officer" if no adverse claims had been filed and the applicant completed all the other required paperwork); 30 U.S.C. §§ 35 (applying § 29 rule to placer claims) & 42 (applying § 29 rule to mill-site claims). In contrast, "issuance of the patents prior to a validity determination is not a ministerial act." *Independence,* 105 F.3d at 508; *see also Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 336–37, 83 S.Ct. 379, 382–83, 9 L.Ed.2d 350 (1962). In fact, the Secretary has no authority to issue a patent until he is satisfied that the applicant has fully complied with the requirements. *Swanson,* 3 F.3d at 1353.

We have twice rejected an argument that *Benson Mining* establishes that the rights to the patents vest upon application. *Independence,* 105 F.3d at 508; *Swanson,* 3 F.3d at 1354. Rather, a claimholder has a right to a patent only after it has complied with the requirements that entitle it to the patent; because validity is one of the requirements, a party's rights do not vest upon application. *Independence,* 105 F.3d at 508. Thus, "no rights [in a patent claim] vest before the Secretary has decided whether to contest the patent claim." *Independence,* 105 F.3d at 508. Upon confirmation that the application is proper, equitable title is treated as having vested on the payment date. *Benson Mining,* 145 U.S. at 430, 12 S.Ct. at 878. Equitable title is not definitively acquired when payment is made.

Accordingly, Vanderbilt is not entitled to recognition of its asserted equitable title to the claims.

AFFIRMED.